These questions are raised by the general demurrer to the petition: (1) Is a claimant, who has received the maximum of $3,750 for temporary total disability and has also been allowed and paid $3,350 ($400 less than the maximum) for partial disability, resulting in the impairment of his earning capacity, entitled further to the full allowance for the loss of a leg from the same injury, amounting, in this case, to $2,457 (2) Is the commencement of the allowance for loss of the leg deferred until the end of the healing period after amputation? *Page 605 
A determination of the problems requires a construction of Section 1465-80, General Code, effective January 1, 1924 (110 Ohio Laws, 225), which in its material parts reads:
"In case of injury resulting in partial disability, the employee shall receive sixty-six and two-thirds per cent of the impairment of his earning capacity during the continuance thereof, not to exceed a maximum of eighteen dollars and seventy-five cents per week, nor a greater sum in the aggregate than thirty-seven hundred and fifty dollars, and such compensation shall be in addition to the compensation allowed to the claimant for the period of temporary total disability resulting from such injury. In cases included in the following schedule, the disability in each case shall be deemed to continue for the period specified and the compensation so paid for such injury shall be as specified herein, and shall be in addition to the compensation allowed to the claimant for the period of temporary total disability resulting from such injury, to wit: * * *
"For the loss of a leg, 66 2/3 per cent of the average weekly wages during one hundred and seventy-five weeks. * * *
"The amounts specified in this clause are all subject to the limitation as to the maximum weekly amount payable as hereinbefore specified in this section."
This section is divided into two parts which are wholly separate. The first refers to partial disability and the second to a schedule in which are enumerated certain specific disabilities for which compensation is paid at a fixed rate for a specified time. In this schedule is enumerated the loss of a leg for which compensation is allowed to a claimant amounting to 66 2/3 per cent of his average weekly wages during 175 weeks. The closing paragraph of the section makes all the allowances provided for in the schedule subject to the maximum weekly amount specified in the first part, namely, $18.75 per week, but contains no reference to *Page 606 
the aggregate maximum of $3,750. Such language clearly shows the intent of the Legislature to be that such aggregate maximum should not apply to the disabilities specifically enumerated in the schedule. Therefore the maximum of $3,750 provided for partial disability has no application to the amount of compensation payable for the loss of a leg. Nor does the previous allowance and payment of $3,750 for temporary total disability have any bearing for the simple reason that the statute expressly provides that compensation specified in the schedule shall be "in addition to the compensation" allowed for temporary total disability. The relator is therefore entitled to receive the full amount specified in the schedule for the loss of his leg.
When does an allowance for loss of a leg begin to run?
Relator's contention is that the time for commencement is the end of the healing period after amputation.
Relator has received the maximum for temporary total disability; so that kind of allowance need not be considered in this connection. He has been allowed compensation for partial disability from a stated time in 1936 to March 2, 1941 — the end of the healing period. This allowance covered the time between the amputation and the time the wound therefrom healed — a period of over seven months. The question arises whether, during these seven months and more, he was entitled to both the weekly compensation for impairment of earning capacity and the specific weekly allowance for the loss of his leg. During the period he was unable to work after the amputation he would not be entitled to compensation for partial disability based on impairment of earning capacity because his disability was total, not partial, and he had no earning capacity. The amounts received by him during that period were therefore improperly paid to him and the respondent in paying compensation hereafter must take that fact *Page 607 
into consideration and make proper deductions so that relator will receive only that to which he is entitled.
Such deductions, however, should be made with due regard to relator's rights as well as respondent's duties. After the leg was taken off, relator could never again receive compensation for partial disability arising solely from the loss of his leg. After full recovery so that he could work again, he would be entitled to compensation for partial disability directly caused by the original injury but not such as arose from the amputation of the leg. That is to say that if the same injury caused osteomyelitis in his right arm, which impaired his earning capacity, he would, after he was able to work again, be entitled to compensation for that partial disability.
The statute does not authorize or permit the postponement of the time that compensation for the loss of a leg begins to run except in case the amputation takes place within a week from the injury; then compensation begins to run upon the expiration of the first week after the injury. Section 1465-78, General Code. In the instant case compensation for loss of the leg shall be awarded as beginning not after the lapse of the healing period but upon amputation. With respect to the payments for partial disability during the healing time the respondent will make such order of adjustment as the circumstances require.
The demurrer to the petition is overruled and, the respondent not desiring to plead further, a writ of mandamus is allowed directing the commission to grant the specified compensation for loss of leg for a period of one hundred and seventy-five weeks beginning with the date of amputation.
Writ allowed.
WEYGANDT, C.J., TURNER, MATTHIAS, HART and ZIMMERMAN, JJ., concur.
 BETTMAN, J., not participating. *Page 608